T.C. Memo. 2014-167

UNITED STATES TAX COURT

BASSETT H. BROWN AND MARCELA M. BROWN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 28934-10.                               Filed August 18, 2014.

Ps attempted to amend year 1 return to add loss from business reported on Schedule C, Profit or Loss From Business. R did not accept amended return but made positive adjustment to year 1 income to reflect gross receipts shown for that business. R disallowed expenses shown (but not gross receipts reported) on year 2 Schedule C.

<u>Held</u>: Ps failed to prove (1) error in year 1 adjustment or (2) year 1 expenses beyond those agreed to by R.

<u>Held</u>, <u>further</u>, Ps failed to prove (1) year 2 expenses or (2) that Ps erroneously reported year 2 gross receipts.

<u>Held</u>, <u>further</u>, accuracy-related penalties sustained.

[*2]   Wilfred I. Aka, for petitioners.

Halvor R. Melom, Kimberly A. Santos, Kathryn A. Meyer, and Debra Ann Bowe, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


HALPERN, Judge:  By notice of deficiency (notice), respondent determined deficiencies of $162,758 and $196,070 in petitioners' 2006 and 2007 Federal income tax, respectively, and accuracy-related penalties of $32,552 and $39,214 for those years, respectively.  The parties have entered into a stipulation of settled issues, and the issues remaining for decision are (1) whether petitioners reported in error for each year certain items of income and expense and (2) the accuracy-related penalties.

Unless otherwise stated, all section references are to the Internal Revenue Code of 1986, as amended and as in effect for 2006 and 2007, and all Rule references are to the Tax Court Rules of Practice and Procedure.  All dollar amounts have been rounded to the nearest dollar.

[*3]                          FINDINGS OF FACT

By stipulation of facts, supplemental stipulation of facts, and second supplemental stipulation of facts, the parties have stipulated certain facts and the authenticity of certain documents.  The facts stipulated are so found, and the documents stipulated are accepted as authentic.

Petitioners

Petitioners resided in California when they filed the petition.  Petitioner husband (Dr. Brown) is a physician.

Central Neighborhood Medical Group, LLC

Central Neighborhood Medical Group, LLC (CNMG LLC), is an entity that, pursuant to section 301.7701-3(a), Proced. & Admin. Regs., is disregarded as an entity separate from its owner.  For tax purposes, the entity's business is treated as a proprietorship, and the entity's owner is considered the proprietor.  Dr. Brown is the sole member (i.e., the owner) of CNMG LLC.

There are exhibits attached to the second supplemental stipulation of facts, for which we held the record open and which were received after the trial of this case was completed.  Exhibit 33-J analyzes expenditures made by CNMG LLC from one of its bank accounts in 2006.  It shows that CNMG LLC expended $27,732 from that account in 2006.  The parties stipulate that, of that $27,732,

[*4] $2,733 is "clear business expense[s]" paid or incurred in carrying on a trade or business, deductible by petitioners as expenses on Schedule C, Profit or Loss From Business, for 2006.

Petitioners' Tax Returns

Petitioners are calendar year taxpayers.  They made a joint return of income tax for 2006 on a Form 1040, U.S. Individual Income Tax Return.  No Schedule C is attached to that return, nor does that return show any gross receipts from business.  Subsequently, petitioners submitted to respondent a Form 1040X, Amended U.S. Individual Income Tax Return, for 2006, which they both signed. On the Form 1040X, petitioners gave the following reason for wishing to make an amended return:  "The taxpayer inadvertently failed to report income and expenses from Central Neighborhood Medical Group, LLC."  Attached to the Form 1040X is an amended 2006 Form 1040, including a Schedule C.  That Schedule C states that it is for a sole proprietorship, and it names Dr. Brown as the proprietor.  It does not identify a principal business or profession, but it identifies the proprietorship as "CNMG LLC".  The Schedule C reports gross receipts of $383,876.  It reports expenses of $578,590.  Petitioners claimed no refund on the Form 1040X.  Instead, they showed tax owing (after a $40 credit) of $18,869. Respondent did not process (i.e., accept for filing) the Form 1040X.  Nevertheless,

**[*5]** in determining the deficiency in petitioners' 2006 tax, respondent treated the Form 1040X, together with the 2006 Schedule C, as an admission by petitioners that they had omitted from the 2006 Form 1040 gross receipts of $383,876. For lack of substantiation, respondent did not allow deductions for any of the expenses reported on the 2006 Schedule C.[1]

Petitioners also made a joint return of income tax on a Form 1040 for 2007. Attached to that return is a Schedule C. That Schedule C reports the same identifying information as the 2006 Schedule C. It reports $461,454 as gross receipts, and it reports expenses totaling $542,013. Respondent's explanation in

---

[1]In the stipulation of facts, the parties stipulate: "Petitioners received Schedule C gross receipts in the amount of $383,876.00 during 2006." In the supplemental stipulation of facts, under the heading "Remaining Issues--2006 and 2007 Schedule C Income and Expenses", the parties stipulate:

Petitioners assert that the income and expenses reported on Schedule C of petitioners' amended 2006 individual income tax return for CNMG, LLC, and on petitioners' 2007 individual income tax return were reported in error and that the income and expenses claimed on said Schedules C for CNMG, LLC, were reported on income tax returns filed by Central Neighborhood Medical Group, Inc., * * * and by Central Neighborhood Health Foundation, * * *.

Petitioners' assertion that they reported in error the income (gross receipts) reported on the 2006 Schedule C would appear to be futile if the parties intended the prior stipulation that petitioners had received the gross receipts shown on that Schedule C to hold. We assume that respondent would not have joined petitioners in a futile act. We therefore relieve petitioners of the prior stipulation. See Rule 91(e).

[*6] support of the notice shows that, in adjusting petitioners' 2007 income, he disallowed the 2007 Schedule C expense deductions but left undisturbed the reported Schedule C gross receipts.

Central Neighborhood Medical Group, Inc.

Central Neighborhood Medical Group, Inc. (Group) is a California corporation organized in 1977. Dr. Brown carries on his medical practice through Group. In 2006 and 2007, Dr. Brown was president of Group. Group is a fiscal year taxpayer whose annual accounting period ends on June 30. For its fiscal years ended June 30, 2006 and 2007, Group made returns of income tax on Forms 1120, U.S. Corporation Income Tax Return. On the 2006 Form 1120, Group reported its business activity as "Practice of Medicine", and it described its product or service as "Medical Care". Group reported that Dr. Brown owned 100% of its common stock. Group made no return of income for its fiscal year ended June 30, 2008.

Group reported $717,469 and $740,862 as gross receipts on the 2006 and 2007 Forms 1120, respectively. On the 2007 Form 1120 (but not on the 2006 Form 1120) it described those gross receipts as insurance payments. On the 2006 Form 1120, it reported total deductions of $710,118, including a deduction of $407,853 for the payment of management fees. On the 2007 Form 1120, it

**[*7]** reported total deductions of $774,678, including a deduction of $450,371 for the payment of management fees.

Central Neighborhood Health Foundation

Central Neighborhood Health Foundation (Foundation) is a California corporation organized in 2004. In 2006 and in 2007, Dr. Brown was the president of Foundation. Like Group, Foundation is a fiscal year taxpayer whose annual accounting period ends on June 30. For its fiscal years ended June 30, 2007 and 2008, Foundation made returns on Form 990, Return of Organization Exempt From Income Tax. On the 2007 Form 990, Foundation reported revenue of $24,623, classified as "Direct public support". It reported total expenses of $142,081. On the 2008 Form 990, Foundation reported revenue of $443,623, classified as "Government contributions". It reported total expenses of $499,656.

During respondent's examination of their returns, petitioners submitted to respondent a document entitled "Central Neighborhood Health Foundation Profit & Loss", for calendar year 2006, which shows (1) $383,876 classified as "Income", "Management Fees", "CNMG LLC" and (2) $569,173 under the headings "Total Expense[s]" and "CNMG LLC". Petitioners also submitted to respondent a second 2006 profit and loss statement for Foundation, which shows the same $383,876 of income as the first statement but described as "Mgmt of

**[*8]** HealthCare Delivery Srv", without any reference to CNMG LLC. It shows total expenses of $466,387. Petitioners submitted to respondent a 2007 profit and loss statement for Foundation, which shows income of $481,954, described as "Mgmt of HealthCare Delivery Srv" and expenses of $571,031.

Exhibit 32-J is attached to the second supplemental stipulation of facts. It analyzes expenditures made by Foundation from one of its bank accounts in 2006. It shows that Foundation expended $548,120 from that account in 2006.[2] Exhibit 34-J analyzes expenditures made by Foundation from one of its bank accounts in 2007. It shows that Foundation expended $508,578 from that account in 2007.

Relationships

By a document, "Management Services Agreement" (management agreement), effective as of November 1, 2003, Dr. Brown (as manager of CNMG LLC) agreed with himself (as president of Group) for CNMG LLC to provide management services to Group. Among other things, the management agreement recites that (1) CNMG LLC is the owner of all of Group's assets other than its health care contracts, (2) it would become the employer of certain prior employees of Group, and (3) it would manage the business aspects of Group's ownership of

---

[2]By the second supplemental stipulation, the parties stipulate that, of that $548,120, $213,792 is "clear business expense[s]" paid or incurred in carrying on a trade or business.

[*9] its health care contracts.  For its services, the management agreement provides that, if Group's working capital is sufficient, "[a]ll Gross Revenues remaining after reimbursement to * * * [CNMG LLC] of its Costs and payment of GROUP Costs shall be paid to * * * [CNMG LLC] as a Management Fee."

By a second document, "Power of Agency", entered into in connection with the management agreement, Dr. Brown (as manager of CNMG LLC) and Dr. Brown (as president and CEO of Group) appointed CNMG LLC's president (Dr. Brown) to act for Group "for the purposes of communicating terms and conditions and otherwise administering the Health Care Contracts."

By a third document, "Assignment of Management Agreement" (assignment), entered into as of December 5, 2005, between Dr. Brown (as sole member and manager of CNMG LLC) and Melvin C. Bell (chairman of Foundation), CNMG LLC assigned its interest in the management agreement to Foundation and Foundation accepted CNMG LLC's obligations under that agreement.

By a fourth document, "Asset Transfer Agreement", referred to in the assignment and entered into as of January 1, 2006, between Dr. Brown (as sole member and manager of CNMG LLC) and Marti Treese ("C.E.O." of Foundation), Dr. Brown agreed to serve as medical director of Foundation and to transfer to

**[*10]** Foundation the management agreement and CNMG LLC's personal property (exclusive of cash and accounts receivable). The agreement further provides that, if Foundation did not obtain proper licenses, it would reassign the management agreement to CNMG LLC and retransfer to it its personal property.

Dr. Brown testified that, for about 10 years (apparently including the years in issue), although "I did not receive income for [my work,] * * * I was seeing patients, [and] I was doing all this stuff, managing, and actually putting money into the organization [apparently Foundation] to keep it afloat, because of the dream of becoming a[n] FQHC [Federally qualified health center]".

Respondent's Examination

During respondent's examination of the 2006 and 2007 Forms 1040, Revenue Agent James Pack requested, but did not receive, from petitioners substantiation of the expenses reported on the 2006 and 2007 Schedules C. Nor did petitioners maintain records to substantiate their claims that income reported on the 2006 and 2007 Forms 1040 duplicates income reported by Group or Foundation.

**[*11]** <u>Notice</u>

Disregarding settled issues and issues involving only computational adjustments, the notice sets out two adjustments resulting in deficiencies in tax for 2006 and 2007. For 2006, respondent increased petitioners' Schedule C gross receipts by $383,876. For 2007, respondent disallowed $542,013 of claimed Schedule C expense deductions.

<u>Petition</u>

By the petition, petitioners not only assign error to respondent's determinations of deficiencies in tax and accuracy-related penalties but claim overpayments of tax of $7,500 and $15,000 for 2006 and 2007, respectively. In support of their assignment and claim, petitioners aver only: "Have evidence to support expenses claimed on Schedule C and unreported state refund is not applicable."

<u>Preparation of the Case for Trial</u>

Petitioners did not cooperate in the preparation of this case for trial. Petitioners did not respond to respondent's attempt pursuant to Rule 91(a) to stipulate facts. Respondent then moved pursuant to Rule 91(f) to compel stipulation. Petitioners failed to respond timely to our December 14, 2011, order to show cause why the matters covered in the motion should not be deemed

[*12] stipulated, and we made the order absolute on January 19, 2012.  Petitioners also failed to respond to respondent's informal request for production of documents, and, on respondent's motion, we ordered petitioners to produce the requested documents.

OPINION

I.    Introduction

At the conclusion of the trial in this case, we ordered petitioners to file a seriatim opening brief (opening brief) on or before August 13, 2013.  Petitioners did not comply.  Having heard nothing from petitioners by September 3, 2013, we extended their time to file an opening brief, and we ordered them to file an opening brief on or before September 17, 2013.  In our order, we stated that, if petitioners failed to file their opening brief by September 17, 2013, they would be precluded from filing an opening brief.  Petitioners did not file an opening brief by the extended due date.  By motion dated October 7, 2013, petitioners moved to extend the due date until October 17, 2013.  We received that motion on October 17, 2013 (October 17 motion), unaccompanied by any opening brief.  On Sunday, October 20, 2013, we received from petitioners a document styled "Petitioners Opening Brief", which we filed in error, since we had precluded them from filing an opening brief after September 17, 2013.  Recognizing our error, by order dated

**[\*13]** October 25, 2013, we ordered the document stricken. In that order, we explained why we were striking the document and ordered petitioners by November 6, 2013, to supplement the October 17 motion with additional information and answers to specific questions concerning the circumstances of their failures to timely file a brief. We ordered a copy of the order to be served by mail on petitioners themselves (in addition to its being served on their counsel), at the address shown on the petition. Petitioners did not comply with that order, and, on November 14, 2013, we denied the October 17 motion. We ordered respondent to inform us of whether he wished to file an answering brief and stated that, if he did not so wish, we would decide the case on the record before us. We again ordered that a copy of that order be served on petitioners themselves. Respondent notified us that he would not file a brief. He did not, however, ask us to hold petitioners in default because of their failure to file a brief. See, e.g., Bond v. Commissioner, T.C. Memo. 2012-313, at \*9-\*10. Many of the facts and documents we need to resolve the issues in this case that have not been settled are stipulated. We will resolve those issues on the basis of the stipulations and the testimony of the two witnesses (Dr. Brown and Revenue Agent Pack). We have also the parties' pretrial memoranda, which give us some information about their arguments.

**[*14]** We should also clarify what issues are left to decide. Petitioners claim overpayments of tax for both 2006 and 2007. They aver no facts in support of those claims. For 2007, should they succeed in their argument that neither the 2007 Schedule C receipts nor expenses should have been reported on the 2007 Form 1040, then, nonetheless, because the 2007 Schedule C shows a loss, there would still be a deficiency in tax (because, without the Schedule C loss, taxable income would increase). For 2006, if they succeed in showing they are entitled to the 2006 Schedule C expenses, then their taxable income, and resulting tax, would be reduced, but they have averred no overpayment of tax, nor does the Form 1040X claim any refund. We will, for the reasons described, not further consider petitioners' refund claims. Petitioners also claim an "unreported state refund is not applicable". Neither in the petition nor elsewhere do petitioners explain what they mean by "unreported state refund is not applicable." We will also not further consider that claim.

In support of their assignment of error to the deficiencies, the only claim left is petitioners' averment that they "[h]ave evidence to support expenses claimed on Schedule C". We assume that petitioners are referring to evidence to support not only their deduction of the expenses that they claimed on the 2007 Schedule C that respondent disallowed but also the expenses that they claimed on the 2006

**[\*15]** Schedule C, which respondent refused to accept as deductible.[3]  Also, although petitioners averred nothing with respect to Schedule C gross <u>receipts</u> (for either 2006 or 2007), it is clear to us that an argument underlying Dr. Brown's testimony at trial was that, if CNMG LLC was not the proper party to report the Schedule C expenses, it was not the proper party to report the Schedule C gross receipts.  We will treat that issue as tried by consent of the parties and as raised in the pleadings.  <u>See</u> Rule 41(b)(1).

## II.     Burden of Proof

In general, a petitioner to this Court bears the burden of proof.  <u>See</u> Rule 142(a).  Section 7491(a)(1) shifts the burden of proof to the Secretary with respect to any factual issue relevant to ascertaining the tax liability of the taxpayer if the taxpayer introduces credible evidence with respect to the issue and has satisfied the preconditions set forth in section 7491(a)(2).  With respect to individuals, those preconditions include the requirements that the taxpayer (1) maintain all records required by the Internal Revenue Code and (2) cooperate with reasonable

---

[3]The 2006 Schedule C is attached to Form 1040X, which respondent did not accept for processing.  Respondent did not disallow deductions for those expenses (since he had not accepted the return for processing); he merely disregarded them when he made the adjustment to the 2006 Form 1040 to reflect the gross receipts shown on the 2006 Schedule C.  Nevertheless, if petitioners can show that they are entitled to deduct the 2006 Schedule C expenses, that showing should reduce any resulting 2006 deficiency in tax.

**[\*16]** requests by the Secretary for witnesses, information, documents, meetings and interviews. See sec. 7491(a)(2)(B). Persons subject to tax must keep records sufficient to establish gross income and deductions. See sec. 6001; sec. 1.6001-1, Income Tax Regs. The requirement for cooperation extends through the pretrial proceedings. See, e.g., Rolfs v. Commissioner, 135 T.C. 471, 483 (2010), aff'd, 668 F.3d 888 (7th Cir. 2012). A taxpayer seeking to shift the burden of proof pursuant to section 7491(a)(1) has the burden of showing that he has satisfied the section 7491(a)(2) preconditions. E.g., Allnutt v. Commissioner, T.C. Memo. 2004-239, 2004 WL 2339813, at \*4.

Petitioners failed to maintain required records; they did not comply with respondent's requests for information during the examination; they failed initially to join in the stipulation process, and they failed to comply with informal requests for documents, resulting in Court-enforced discovery. Petitioners have failed to show that they have satisfied the record maintenance and cooperation requirements that are preconditions to the burden of proof's shifting to respondent. Petitioners bear the burden of proof.

[*17] III.    Deficiencies in Tax

    A.    Foundation's Expenses

Beginning some time before 2006 and continuing during 2006 and 2007, Group was in the business of providing medical care. At various times (if not at all times) from November 2003 to 2006 and at all times during 2006 and 2007, Dr. Brown was president of Group. Beginning in late 2003 and continuing through 2005, CNMG LLC provided management services for a fee to Group pursuant to the management agreement. Dr. Brown, as president of CNMG LLC, was in 2003 given the power to act for Group in connection with the health care contracts Group held. No later than January 1, 2006, CNMG LLC assigned the management agreement to Foundation and transferred to it certain of its property relating to the management of Group. Dr. Brown agreed to serve as medical director of Foundation. Foundation's profit and loss statements, two for calendar year 2006 and one for calendar year 2007, all show the receipt of management fees, which we presume were received from Group for management services provided to it. Those statements also show significant expenses, which we presume to have been incurred in connection with Foundation's providing management services to Group. Indeed, a bank account analysis shows that Foundation actually expended $548,120 in 2006. We cannot, however, reconcile

[*18] Foundation's profit and loss statements and its bank account analysis with Foundation's tax returns (the 2006 and 2007 Forms 990), which (1) are June 30 fiscal year returns and (2) show no revenue from management fees.  We are persuaded, nevertheless, that during 2006 and 2007 Foundation was providing management services for a fee to Group pursuant to the management agreement and the assignment.  There is no evidence that, in doing so, Foundation was acting as an agent for CNMG LLC or for Dr. Brown.  We have no evidence that any of the expenses incurred by Foundation during 2006 and 2007 were incurred by, or on behalf of, CNMG LLC or Dr. Brown.  To the extent that petitioners rely on persuading us that Foundation reported in error expenses properly reportable by CNMG LLC or by Dr. Brown, they have failed to do so.

B.    Dr. Brown's Income

In 2006 and 2007, Dr. Brown was the president of Foundation.  He had also agreed to serve as its medical director.  On its 2006 and 2007 Forms 1120, Group deducted $407,853 and $450,371, respectively, for the payment of management fees.  Group's returns are June 30 fiscal year returns, and those amounts do not correspond to the $383,876 and $481,954 shown as management fee receipts on Foundation's profit and loss statements for 2006 and 2007, respectively.  Foundation reported no management fees on either the 2006 or the 2007

**[\*19]** Form 990.  The $383,876, however, is the same amount of gross receipts reported by Dr. Brown on the 2006 Schedule C.

Petitioners' principal defense to respondent's adjustment for 2006 including $383,876 in their gross income (and in support of their claim that they overreported their 2007 gross income) is that the management fees were misreported by petitioners because they were reported on income tax returns filed by Group and by Foundation.  The evidence is to the contrary.  The evidence is that, while Group <u>did</u> pay management fees to Foundation, Foundation <u>did not</u> report any management fees as income.  Petitioners have failed to persuade us that management fees paid by Group were reported on Foundation's returns.

Nor have petitioners persuaded us that for some other reason respondent erred in making a $383,876 positive adjustment to their 2006 income.  Respondent made that adjustment because petitioners reported gross receipts in that amount on the 2006 Schedule C, attached to the Form 1040X, which they signed.  Although respondent did not accept that return for filing, the general rule is:  "Statements made in a tax return signed by a taxpayer may be treated as admissions."  <u>Lare v. Commissioner</u>, 62 T.C. 739, 750 (1974), <u>aff'd without published opinion</u>, 521 F.2d 1399 (3d Cir. 1975).  Unless it is rebutted, we thus have petitioners' admission that in 2006 CNMG LLC did receive $383,876 of Schedule C gross receipts.

[*20] Certainly, as president of Foundation and as its medical director (and given his testimony about his work), it would not be unusual that Dr. Brown was compensated. It is true that Dr. Brown testified that he worked without pay. But it is also true that petitioners' first line of defense is that the management fees were reported by Foundation, which is not true. And petitioners have not adequately explained why they reported $383,876 on the 2006 Schedule C. Dr. Brown testified only that the various returns were prepared by people who "didn't understand all the relationships of the entities." We find incredible Dr. Brown's testimony that CNMG LLC was uncompensated for services that he performed in 2006. Petitioners have not rebutted their admission by way of the 2006 Schedule C that, in 2006, CNMG LLC did receive gross receipts of $383,876. They have failed to carry their burden of proving facts to support their assignment that respondent erred in increasing their 2006 Schedule C gross receipts by $383,876. We will, therefore, sustain that adjustment. The parties stipulate that CNMG LLC expended $27,732 in 2006, of which $2,733 is "clear business expense[s]", deductible as such by petitioners for 2006. Petitioners have failed to prove that, for 2006, CNMG LLC is entitled to any additional offsets or deductions.

**[*21]** Respondent made no adjustment to petitioners' 2007 reported gross income. Petitioners have failed to prove that CNMG LLC's 2007 gross receipts were any less than the $461,454 shown on the 2007 Schedule C. They have likewise failed to prove that they are entitled to any of the $542,013 of expenses claimed on the 2007 Schedule C and disallowed by respondent.

## IV.    Accuracy-Related Penalties

Section 6662(a) and (b)(2) imposes an accuracy-related penalty (penalty) equal to 20% of the portion of an underpayment of tax attributable to any substantial understatement of income tax. Section 6662(d)(1)(A) defines a "substantial understatement of income tax" as an understatement in an amount exceeding the greater of 10% of the tax required to be shown on the return or $5,000. As pertinent, the term "understatement" is defined as the excess of the amount of tax required to be shown on the return over the amount shown. Sec. 6662(d)(2)(A). The parties stipulated, and they confirmed before the Court, that, for either 2006 or 2007, if there is a substantial understatement of income tax, as above defined, petitioners will concede the penalty for the year. If there is not, respondent will concede the penalty for the year. We have no doubt that for both

**[\*22]** 2006 and 2007 there is a substantial understatement of income tax.  We will, therefore, sustain the penalties.

<u>Decision will be entered under</u>

<u>Rule 155</u>.