T.C. Summary Opinion 2017-34

UNITED STATES TAX COURT

JOSEPH PALISI AND LISA PALISI, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3384-15S.                          Filed May 24, 2017.

Joseph Palisi, pro se.

<u>Deborah Aloof</u>, for respondent.

SUMMARY OPINION

ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to the

provisions of section 7463 of the Internal Revenue Code in effect when the

petition was filed.[1] Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined deficiencies in, and accuracy-related penalties on, petitioners' Federal income tax for 2011 and 2012 as follows:

| Year | Deficiency | Penalty sec. 6662(a) |
|------|------------|----------------------|
| 2011 | $28,909 | $5,782 |
| 2012 | 11,663 | 2,333 |

After concessions by the parties,[2] and without regard to adjustments that are mechanical or in petitioners' favor, the issues for decision are:

(1) whether petitioner Joseph Palisi underreported gross receipts by $85,134 on his Schedule C for 2011 (after respondent's concession, see supra note 2) and by $42,518 on his Schedule C for 2012; and

---

[1] Unless otherwise indicated, all subsequent section references are to the Internal Revenue Code, as amended and in effect for the taxable years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts have been rounded to the nearest dollar.

[2] Respondent concedes a reduction of $8,468 (from the amount determined in the notice of deficiency) to gross receipts on Schedule C, Profit or Loss From Business, for 2011. Petitioners concede (1) a reduction to cost of goods sold of $43 on Schedule C for 2011 and (2) receipt of unreported interest income of $84 for 2012.

(2) whether petitioners are liable for accuracy-related penalties under section 6662(a) for 2011 and 2012.

Background

Some of the facts have been stipulated, and they are so found. The Court incorporates by reference the parties' stipulation of facts and accompanying exhibits.

Joseph Palisi (petitioner) and Lisa Palisi (Mrs. Palisi), collectively petitioners, resided in the Commonwealth of Virginia at the time that the petition was filed with the Court.[3]

During the years in issue petitioner worked as a steam fitter and Mrs. Palisi was not employed outside the home.

Also during the years in issue petitioner owned a sole proprietorship, Aaron Arms, LLC (Aaron Arms), whose business principally involved the selling of firearms at gun shows throughout Virginia. Aaron Arms accepted customer payments in the form of cash, personal checks, and credit cards.

---

[3] Mrs. Palisi did not appear at trial and did not sign the stipulation of facts. Accordingly, the Court will dismiss this action as to her pursuant to respondent's oral motion to dismiss for lack of prosecution. See Rule 123(b). However, entry of the order of dismissal against Mrs. Palisi will be deferred so that the decision as to her will be consistent with the decision as to petitioner.

Petitioner did not maintain adequate books or records for Aaron Arms reflecting income and expenses.

In 2011 petitioners maintained multiple bank accounts with both PNC Bank and Branch Banking & Trust Co.

Petitioners timely filed a joint Federal income tax return for each of the years in issue. Petitioners signed each of the returns. At the bottom of page 2 of petitioners' 2011 Form 1040, U.S. Individual Income Tax Return, in the section labeled "Paid Preparer Use Only", the phrase "self prepared" appears without any further specification or detail. At the bottom of page 2 of petitioners' 2012 Form 1040, the section labeled "Paid Preparer Use Only" is blank without any entry.

Petitioners attached to their 2011 and 2012 tax returns Schedules C for Aaron Arms. As relevant, petitioner reported on the Schedule C for 2011 gross receipts of $133,308, negative gross income of $20,266, and a net loss of $32,240. As relevant, petitioner reported on the Schedule C for 2012 gross receipts of $192,973, gross income of $14,133, and a net loss of $10,373.

After filing their 2012 income tax return petitioners submitted two amended returns for that year. Petitioners signed each amended return. The returns are also signed by a third party as a purported paid preparer; however, the phrase "self prepared" appears on the line for "Firm's name (or yours if self-employed)".

Petitioners attached a Schedule C for Aaron Arms to each of the amended returns for 2012. As relevant, on the Schedule C attached to the first amended return petitioner reported gross receipts of $227,350 and gross income of $43,467, and claimed a net loss of $2,264. As relevant, on the Schedule C attached to the second amended return petitioner reported gross receipts of $235,491 and gross income of $47,331, and claimed a net profit of $444. Notably, on the Schedule C attached to the second amended return petitioner increased gross receipts by $42,518 compared with the amount reported on the Schedule C attached to their original return, i.e., $235,491 – $192,973. Respondent did not accept and process either of petitioners' amended returns.

The Internal Revenue Service examined petitioners' 2011 and 2012 Federal income tax returns. For 2011 respondent performed a bank deposits analysis and determined that petitioner had received unreported income from Aaron Arms in the following amount:

| | |
|---|---:|
| Total deposits | $419,309 |
| Less: nontaxable & transfer deposits | – 102,586 |
| Balance | 316,723 |
| Less: gross receipts reported on the return[1] | – 223,121 |
| Unreported income | 93,602 |

[1]Includes net wages, net pensions, interest, and unemployment, as well as reported gross receipts.

In November 2014 respondent sent petitioners a notice of deficiency. As relevant, respondent increased petitioner's Schedule C gross receipts by $93,602 for 2011 on the basis of the aforementioned bank deposits analysis. For 2012 respondent increased petitioner's Schedule C gross receipts by $42,518 on the basis of the gross receipts reported on the Schedule C attached to petitioners' second amended return. Additionally, respondent determined that petitioners were liable for both years for accuracy-related penalties under section 6662(a) and (b)(1) and (2) on the basis of both negligence or disregard of rules or regulations and substantial understatement of income tax.

In response to the notice of deficiency petitioners filed a timely petition for redetermination with the Court. In due course the case was tried. At the end of the trial the Court ordered one round of seriatim briefs. Respondent filed a brief; in contrast, petitioners did not.[4]

---

[4] When a party fails to file a brief after being ordered to do so, such a failure has been held by the Court to justify the dismissal of all issues as to which the nonfiling party has the burden of proof. See Rule 123; Stringer v. Commissioner, 84 T.C. 693 (1985), aff'd without published opinion, 789 F.2d 917 (4th Cir. 1986). Nevertheless, the Court may choose (as it does here) not to exercise its discretion to dismiss the case and instead proceed on the merits.

## Discussion

In general, the Commissioner's determination in a notice of deficiency is presumed to be correct, and the taxpayer bears the burden to show otherwise. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Welch v. Helvering, 290 U.S. 111, 115 (1933). Although the burden may shift to the Commissioner under section 7491(a) if certain requirements are satisfied, petitioners have not alleged that the section applies, and the record does not support its applicability.

### I.  Gross Receipts for 2011

In the present case respondent reconstructed petitioners' income because petitioner did not maintain adequate books and records for Aaron Arms. See sec. 446(b); Petzoldt v. Commissioner, 92 T.C. 661, 693 (1989); Schroeder v. Commissioner, 40 T.C. 30, 33 (1963); see also Giddio v. Commissioner, 54 T.C. 1530, 1532-1533 (1970). In so doing respondent used the bank deposits method, which has long been sanctioned by the courts as an acceptable method of income reconstruction. See Estate of Mason v. Commissioner, 64 T.C. 651, 656 (1975), aff'd, 566 F.2d 2 (6th Cir. 1977); see also DiLeo v. Commissioner, 96 T.C. 858, 867-868 (1991), aff'd, 959 F.2d 16 (2d Cir. 1992).

A bank deposit is prima facie evidence of income. DiLeo v. Commissioner, 96 T.C. at 868; Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). The bank deposits method assumes that all of the money deposited into a taxpayer's accounts is taxable income unless the taxpayer can show that the deposits are nontaxable. See DiLeo v. Commissioner, 96 T.C. at 868; see also Price v. United States, 335 F.2d 671, 677 (5th Cir. 1964).

The Commissioner is not required to show a likely source of income when using the bank deposits method, but the Commissioner is obliged to take into account any nontaxable item or deductible expense that is known to him or her. See Price, 335 F.2d at 677; Tokarski v. Commissioner, 87 T.C. at 77. After the Commissioner reconstructs a taxpayer's income using the bank deposits method, the taxpayer bears the burden of proving error, Clayton v. Commissioner, 102 T.C. 632, 645 (1994); DiLeo v. Commissioner, 96 T.C. at 882-883, and the taxpayer may do so by proving that a deposit is nontaxable, Clayton v. Commissioner, 102 T.C. at 645; Omar v. Commissioner, T.C. Memo. 2015-238, at *14-*15.

Petitioner does not challenge respondent's bank deposits analysis other than to contend that it overstates his gross receipts for 2011. Petitioner contends that respondent's bank deposits analysis does not take into account his manual bank transfers and redeposits. The Court largely accepts petitioner's testimony, which

we found generally credible, that on various dates in 2011 he manually withdrew money from one bank account and subsequently deposited such money (or a portion thereof) into another of his multiple bank accounts. Although respondent's bank deposits analysis credits petitioner with redeposits, the Court finds that the analysis understates the magnitude of such redeposits.

Mindful as we are of the recordkeeping requirements of section 6001 and the regulations promulgated thereunder that require taxpayers to maintain records sufficient to permit verification of income, see sec. 1.6001-1(a), (e), Income Tax Regs., and using our best judgment based on available documentary evidence and the record as a whole, we conclude that petitioner had unreported gross receipts of $42,750 for 2011, see Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930); Buske v. Commissioner, T.C. Memo. 1998-29 (applying Cohan to determine amount of unreported income); Kale v. Commissioner, T.C. Memo. 1996-197 (same); Alanis v. Commissioner, T.C. Memo. 1995-263 (holding that in cases of unreported income it may be appropriate for the Court to make estimates of the amount of income that the taxpayer has failed to report, applying the Cohan principle); Smith v. Commissioner, T.C. Memo. 1993-548 (applying Cohan to adjust both bank deposits and nontaxable items in reconstructing income).

II. Gross Receipts for 2012

"Statements made on a tax return signed by the taxpayer have long been considered admissions, and such admissions are binding on the taxpayer, absent cogent evidence indicating they are wrong." Pratt v. Commissioner, T.C. Memo. 2002-279, slip op. at 13 (citing Waring v. Commissioner, 412 F.2d 800, 801 (3d Cir. 1969), aff'g T.C. Memo. 1968-126, Lare v. Commissioner, 62 T.C. 739, 750 (1974), aff'd without published opinion, 521 F.2d 1399 (3d Cir. 1975), and Rankin v. Commissioner, T.C. Memo. 1996-350, aff'd, 138 F.3d 1286 (9th Cir. 1998)).

In the notice of deficiency respondent increased petitioner's gross receipts for 2012 by $42,518, i.e., the difference between the gross receipts reported on the Schedule C attached to the original return, $192,973, and the gross receipts reported on the Schedule C attached to the second amended return, $235,491.[5] Petitioners do not contend (nor is there evidence in the record demonstrating) that the Schedule C attached to the second amended return is inaccurate. Accordingly, the Court regards such Schedule C as an admission that petitioner had gross

[5] As previously stated, respondent did not accept and process petitioners' amended returns. However, because petitioners signed those returns and submitted them to respondent, the Court regards statements made therein as admissions, subject to the blackletter law discussed supra p. 10. See Brown v. Commissioner, T.C. Memo. 2014-167, at *19.

receipts from Aaron Arms of $235,491 for 2012. The Court therefore sustains respondent's determination that petitioner underreported gross receipts by $42,518 for that year (i.e., $235,491 – $192,973).

## III. Accuracy-Related Penalty

As relevant herein, section 6662(a) and (b)(1) and (2) imposes a penalty equal to 20% of the amount of any underpayment attributable to either (1) negligence or disregard of rules or regulations or (2) a substantial understatement of income tax. See sec. 6662(c) (regarding negligence) and (d) (regarding substantial understatement of income tax).

"Negligence" includes any failure to make a reasonable attempt to comply with the Internal Revenue Code, specifically including the failure to maintain adequate books and records. See sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. An understatement of income tax is "substantial" if it exceeds the greater of $5,000 or 10% of the tax required to be shown on the return. Sec. 6662(d)(1)(A). By definition an understatement generally is the excess of the tax required to be shown on the tax return over the tax actually shown on the return. Sec. 6662(d)(2)(A).

With respect to a taxpayer's liability for the penalty, section 7491(c) places on the Commissioner the burden of production, thereby requiring the

Commissioner to produce sufficient evidence indicating that it is appropriate to impose the penalty. Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). Once the Commissioner satisfies the burden of production, the taxpayer must produce persuasive evidence that the Commissioner's determination is incorrect. See Rule 142(a); Welch v. Helvering, 290 U.S. at 115; Higbee v. Commissioner, 116 T.C. at 447.

Respondent established that petitioner failed to maintain adequate records for Aaron Arms. Accordingly, respondent has satisfied his burden of production.[6] See sec. 1.6662-3(b)(1), Income Tax Regs.

Section 6664(c)(1) provides an exception to the imposition of the accuracy-related penalty if the taxpayer establishes that there was reasonable cause for, and the taxpayer acted in good faith with respect to, the underpayment. Sec. 1.6664-4(a), Income Tax Regs. The decision whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax

---

[6] Given the magnitude of unreported gross receipts for the two years in issue, the substantial understatement of income tax that likely exists for each such year would also serve to satisfy respondent's burden of production. However, given our finding that petitioner failed to maintain adequate books and records for Aaron Arms, the computational matter regarding whether a substantial understatement exists need not be addressed by the parties in a Rule 155 computation.

Regs. Generally, the most important factor in so deciding is the extent of the taxpayer's effort to assess the proper tax liability. Id.

Petitioner has not satisfied his burden of persuasion with respect to reasonable cause and good faith. At trial petitioner had little to say about this issue other than to state that a tax return preparer had been consulted. However, neither the 2011 nor 2012 original return is signed by a tax return preparer; indeed, both such returns state that they are "self-prepared" and are signed by petitioners. Moreover, petitioner did not call any tax return preparer as a witness at trial and did not provide any evidence to support a finding of reasonable reliance on a return preparer. See Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), aff'd, 162 F.2d 513 (10th Cir. 1947); see also Weis v. Commissioner, 94 T.C. 473, 487 (1990), setting forth the requirements to establish good-faith reliance on the advice of a tax return preparer.[7] Thus, on the record before us, the Court is unable to conclude that

---

[7] In some circumstances a taxpayer's reliance on a competent and experienced accountant or other preparer in the preparation of the taxpayer's return may constitute reasonable cause and good faith. To show good-faith reliance, however, "the taxpayer must establish that the return preparer was supplied with all necessary information and the incorrect return was a result of the preparer's mistakes." Weis v. Commissioner, 94 T.C. 473, 487 (1990); see also Westbrook v. Commissioner, 68 F.3d 868, 881 (5th Cir. 1995), aff'g T.C. Memo. 1993-634; Enoch v. Commissioner, 57 T.C. 781, 802 (1972) ("The ultimate

(continued...)

petitioners acted with reasonable cause and in good faith within the meaning of section 6664(c)(1).  Accordingly, petitioners are liable for the accuracy-related penalties under section 6662(a) for the years in issue.

IV.  Conclusion

In sum, the Court holds that petitioners had unreported gross receipts of $42,750 for 2011 and $42,518 for 2012.  Although petitioner did not expressly raise or argue the matter at trial, the Court notes that there is no persuasive evidence in the record demonstrating that petitioners are entitled to either (1) a Schedule C adjustment in their favor for cost of goods sold (other than the modest amount for 2012 that respondent allowed in the notice of deficiency) or (2) additional Schedule C deductions (other than those respondent allowed for both years in the notice of deficiency).  The Court also holds that petitioners are liable for the accuracy-related penalties for 2011 and 2012.

In so holding, the Court has considered all of the arguments advanced by the parties and, to the extent not expressly addressed, the Court concludes that

---

[7](...continued)
responsibility for a correct return lies with the taxpayer, who must at least furnish the necessary information to his agent who prepared the return.”).

those arguments are without merit, irrelevant, or moot.  To reflect our disposition

of the disputed issues, as well as the parties' concessions,[8]

An order granting respondent's

motion to dismiss for lack of prosecution as

to petitioner Lisa Palisi and decision under

Rule 155 will be entered.

---

[8] See supra note 2.